**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 21, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

ADAM RICHARD, a/k/a Adam Scott,

      Defendant - Appellant.

No. 08-6243

(W.D. Oklahoma)

(D.C. No. 5:08-CR-00079-F-1)

### ORDER AND JUDGMENT[*]

Before **LUCERO**, **ANDERSON**, and **EBEL**, Circuit Judges.


On March 18, 2008, a federal grand jury returned a single count indictment

against defendant and appellant, Adam Richard.  The indictment charged

Mr. Richard with being an unlawful user of a controlled substance in knowing

possession of a firearm that had been transported in interstate commerce, in

violation of 18 U.S.C. § 922(g)(3).  Mr. Richard filed a pretrial motion to dismiss

the indictment, arguing that the statute was unconstitutional, which was denied,

---

[*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

and he filed a motion to suppress evidence seized from his residence pursuant to a search warrant. Following a hearing, the motion to suppress was also denied.

The case was tried to a jury on June 4 and 5. The jury found Mr. Richard guilty, and Mr. Richard's post-trial motion for judgment of acquittal was denied. Mr. Richard was sentenced to sixty months of probation and was ordered to pay a special assessment of $100.00. This appeal followed, in which we affirm the decisions of the district court.

## BACKGROUND

On January 27, 2006, law enforcement personnel executed a federal search warrant at 1701 Wilshire in Duncan, Oklahoma, the residence of Mr. Richard's parents. Mr. Richard lived there with his parents. Inside Mr. Richard's bedroom agents found a .22 caliber Ruger rifle in a corner, and a black bag containing drug paraphernalia on top of Mr. Richard's computer. Inside the black bag, agents found a smaller blue bag that contained four cut drinking straws that are commonly used to snort methamphetamine, a black capped clear glass vial with suspected methamphetamine residue on it, a small glass vial wrapped in black electric tape with suspected methamphetamine residue on it, and a smaller plastic baggie with two corners removed. Each item subsequently tested positive for methamphetamine residue.

On February 8, 2006, Mr. Richard met voluntarily with law enforcement personnel from the Drug Enforcement Administration ("DEA"), the Bureau of Alcohol, Tobacco and Firearms ("ATF"), and the Stephen's County Sheriff's Office. The interview lasted approximately an hour to an hour and forty-five minutes and involved a discussion of the items the law enforcement personnel had seized from Mr. Richard's bedroom the previous month. Mr. Richard asked permission to audio-tape the interview, but the authorities declined his request.

According to police notes and testimony, Mr. Richard admitted during the interview that he had been using methamphetamine for the last three to four years and that his last usage had been a few days before the interview. Mr. Richard further stated that he would use methamphetamine every day or every other day, consuming up to a gram each time. During the interview, Deputy Richards and Agent Nunley noticed sores on Mr. Richard's face, neck and arms that they thought were similar to sores found on regular users of methamphetamine. DEA Investigator Crowder and Agent Nunley testified that they recalled Mr. Richard indicating that his preferred method of ingesting methamphetamine was to snort it. Investigator Crowder further testified that Mr. Richard said he did not go out looking for methamphetamine; rather, he only used it when people provided him with it. Mr. Richard stated that the rifle in his bedroom was a gift from an uncle and that he last shot the rifle six or seven months before. He said that he had possessed the rifle for the last two years.

As indicated above, a federal grand jury indicted Mr. Richard on one count of being a drug user in possession of a firearm, in violation of 18 U.S.C. § 922(g)(3), and a jury found him guilty. On appeal, he makes the following arguments: (1) the district court erred by denying Mr. Richard's pretrial motion to suppress evidence obtained pursuant to the execution of a search warrant that lacked probable cause to believe evidence of a crime would be found in the residence to be searched; (2) the district court erred by denying Mr. Richard's motions to dismiss the indictment on the ground that (a) 18 U.S.C. § 922(g)(3) is unconstitutionally vague as applied to him, and/or (b) 18 U.S.C. § 922(g)(3) violates the Second Amendment's protection of Mr. Richard's right to keep and bear arms; (3) the district court erroneously instructed the jury on the definition of an unlawful user of a controlled substance and there was insufficient evidence to support the jury's guilty verdict; and (4) the district court erred by denying Mr. Richard's post-trial motion for judgment of acquittal, based on the denial of Mr. Richard's right to due process.

## DISCUSSION

### I. Denial of Motion to Suppress:

The firearm found in Mr. Richard's bedroom was seized pursuant to a search warrant authorized by a United States Magistrate Judge. ATF Special Agent Todd Nunley supplied the affidavit supporting the search warrant.

Mr. Richard argues that the affidavit was "devoid of facts providing a nexus between the place to be searched and the items to be seized," Appellant's Br. at 24, and he argues that what facts were presented in the affidavit were stale.

The affidavit began with Agent Nunley's description of his own experience in the investigation of drug cases and what he has typically found in searches in such cases. He then recited that he "submit[s] that evidence of the above-described offenses will be present at" the identified residence of Mr. Richard, 1701 Wilshire Drive, Duncan, Stephens County, Oklahoma. Aff. ¶ 2, Appellant's Add. of Exs. at 13. The affidavit proceeded to list five and one-half pages of common characteristics of "individuals involved in the distribution of illegal controlled substances," including: using leased vehicles with hidden compartments; using concealed storage spaces and outbuildings containing drug-making materials and paraphernalia; using isolated buildings and structures because of the volatile nature of methamphetamine production and the distinct odor it produces; using "front" businesses and other means to launder cash received from drug sales; maintaining books, records, receipts, etc. at the drug dealer's residence or place of business; hiding evidence of drug transactions in secure locations within the drug dealer's residence, place of business, or vehicle; attempting to make proceeds of drug sales appear legitimate; maintaining lists of addresses and/or phone numbers of drug trafficking associates and using cell phones and pagers to maintain contact with associates; maintaining firearms at the

drug dealer's residence or place of business, as "[f]irearms are tools of the trade for drug dealers"; investing illegal proceeds from drug transactions in legal businesses; trading controlled substances for other stolen items like firearms, checks and financial instruments; frequently using five, ten and twenty dollar denomination bills; illegally possessing firearms for extended periods of time, typically at the drug dealer's residence or other property; and using counter-surveillance equipment to warn of intruders and law enforcement approaching the drug dealer's residence. Id. ¶ 3, pp. 14-19. The next four paragraphs recited more general observations about the conduct and behavior of drug dealers, based upon Agent Nunley's experience.

Agent Nunley thereafter set out the facts he believed established probable cause that evidence that Mr. Richard was a user of a controlled substance and that he possessed firearms would be found at the residence he shared with his parents. Agent Nunley averred that the information contained in the affidavit has "been corroborated through interviews as well as surveillance." Id. at ¶ 9. While there are chunks of the affidavit that have been redacted because they do not pertain to Mr. Richard, there are references to Mr. Richard receiving methamphetamine (in late 2004); providing precursor chemicals, particularly ephedrine (in late 2004 and on other undated occasions); possessing firearms and having a "fixation" with them; living at the Wilshire residence with his parents; behaving like a person on methamphetamine (in June 2005, while officers were conducting surveillance of

-6-

another residence);[1] dealing primarily in cash; hiding ephedrine in the attic and walls of his parents' residence (in August 2004); having access to and spending large amounts of cash; being involved in transactions involving ephedrine (on numerous occasions, including May 2004); admitting in March 2005 that he was involved with the use and distribution of methamphetamine; and associating with known methamphetamine users. As indicated, a magistrate judge issued a search warrant on the basis of the affidavit in support of the search warrant, and a firearm and methamphetamine were found in Mr. Richard's bedroom at the house on Wilshire.

Mr. Richard filed a motion to suppress, and a hearing was conducted, although no evidence was presented. After hearing arguments of counsel, the district court denied the motion, finding as follows:

> The motion to suppress will be denied. And I'm denying the motion because I have very carefully considered it. I have very carefully considered the briefs that have been filed and the arguments that have been made. And I'm denying the motion because I think that it is the legally and factually correct ruling. But it is, in my estimation, an exceedingly close issue. . . .
>
> As I have already mentioned, I'm not swayed nearly as much by the staleness issue as an independent issue as I am by the issue as to the nexus between the criminal activity described in the affidavit

---

[1]One of these incidents involved an unnamed person telling Agent Nunley that Mr. Richard's mother said, in late 2004, that "she had observed instances where her son, Adam RICHARD, would be awake for three (3) days and then sleep for a period of three (3) days." Id. at ¶ 24. When the unnamed person was asked what would make an individual exhibit behavior like that, he responded, "meth." Id.

and the place that was searched. So as to staleness as an independent basis for suppression, I'm not persuaded that staleness is a problem.

The older information or the less recent information set forth in the affidavit does, in my view, provide context and continuity in a sense and I think in a very realistic sense as a backdrop that provides, in turn, a confidence level for the magistrate in evaluating the more recent information in the affidavit. The older information, in and of itself, certainly might not be enough to support the warrant, but it does bolster the affidavit as to the more recent activity.

On the issue of the nexus between the criminal activity described in the affidavit and the place to be searched, I do deny the motion, but I will say and I must say that this case, in my view, is on the razor's edge . . . .

. . . .

This affidavit has precious little on its face, at least as of the date close to the early 2006 date, that provides a reliable nexus to the place to be searched. . . . But both on the underlying issue of whether there's a fair probability that the fruits of criminal activity will be found at the place to be searched on the basis of the affidavit itself and, if need be, on the basis of [the good faith exception of] United States v. Leon, [468 U.S. 897 (1984)], I do deny the motion.

Tr. of Mot. to Suppress at 37-40, R. Vol. 2.

"In reviewing the denial of a motion to suppress, we must view the evidence in the light most favorable to the government and uphold the district court's factual findings unless clearly erroneous." United States v. Roach, ___ F.3d ___, 2009 WL 2989182, at *4 (10th Cir. Sept. 21, 2009). Because the probable cause determination must be supported by facts contained in the affidavit in support of the search warrant, "we limit our review to those facts." Id. The sufficiency of a search warrant is a conclusion of law, however, which

-8-

we review de novo.  Id.  Finally, "[w]e afford great deference to a magistrate's finding of probable cause, reversing only if the affidavit supporting the warrant application provides 'no substantial basis for concluding that probable cause existed.'"  Id. (quoting United States v. Danhauer, 229 F.3d 1002, 1006 (10th Cir. 2000) (further quotation omitted)).

"An affidavit establishes probable cause for a search warrant if the totality of the information it contains establishes the fair probability that contraband or evidence of a crime will be found in a particular place."  United States v. Soderstrand, 412 F.3d 1146, 1152 (10th Cir. 2005) (further quotation omitted).  Accordingly, "[p]robable cause requires only a probability or substantial chance of criminal activity, rather than an actual showing of such activity."  United States v. Biglow, 562 F.3d 1272, 1281 (10th Cir. 2009 ) (quotation marks and citation omitted).  The affidavit must, however, show a "nexus between . . . suspected criminal activity and the place to be searched, and a court may not arrive at probable cause simply by piling hunch upon hunch."  Roach, 2009 WL 2989182, at *4 (quotation marks and citations omitted).

Mr. Richard argues that Agent Nunley's affidavit in support of the search warrant was deficient and failed to establish probable cause because it relied on stale, outdated and insufficient evidence showing a nexus between Mr. Richard's drug activities and the Wilshire residence.  We disagree.

**A.  Nexus**

With respect to the nexus requirement, "[w]hether a sufficient nexus has been established between a defendant's suspected criminal activity and his residence . . . necessarily depends upon the facts of each case." Biglow, 562 F.3d at 1279.  "Certain non-exhaustive factors relevant to our nexus analysis include (1) the type of crime at issue, (2) the extent of a suspect's opportunity for concealment, (3) the nature of the evidence sought, and (4) all reasonable inferences as to where a criminal would likely keep such evidence." Id.  Our case law has established that "a sufficient nexus is established once 'an affidavit describes circumstances which would warrant a person of reasonable caution' in the belief that 'the articles sought' are at a particular place." Id. (quoting United States v. One Hundred Forty-Nine Thousand Four Hundred Forty-Two and 43/100 Dollars ($ 149,442.43) in U.S. Currency, 965 F.2d 868, 874 (10th Cir. 1992)).

Furthermore, "[w]e have long recognized that magistrate judges may 'rely on the opinion' of law enforcement officers 'as to where contraband' or other evidence 'may be kept.'" Id. (quoting United States v. Hargus, 128 F.3d 1358, 1362 (10th Cir. 1997)).  Thus, "[i]n some cases, the 'additional evidence' linking an individual's suspected illegal activity to his home has . . . come in the form of

an affiant officer's statement that certain evidence—in his or her professional experience—is likely to be found in a defendant's residence." Id.[2]

As a result, "magistrate judges may draw their own reasonable conclusions, based on the Government's affidavit and the practical considerations of everyday life, as to the likelihood that certain evidence will be found at a particular place." Id. at 1280. Given that standard, we agree with the district court's analysis concluding that, while it is a close question, there was sufficient indicia that evidence of Mr. Richard's drug activity would be found at his house. We note Mr. Richard's point that there were only two explicit references to the Wilshire residence in the affidavit. Nonetheless, Agent Nunley expressed his professional

---

[2]We acknowledged in Biglow that there has been some confusion in our case law regarding the nexus requirement:

> All agree that a nexus must exist between suspected criminal activity and the place to be searched, but the parties dispute the strength of the evidence that must link the two. On one hand, Defendant cites our decision in United States v. Rowland, 145 F.3d 1194, 1204 (10th Cir. 1998) for the proposition that probable cause 'to search a person's residence does not arise based solely upon probable cause that the person is guilty of a crime.' We noted, in that case, that 'additional evidence' must link a defendant's home to 'the suspected criminal activity.' On the other hand, the Government relies on a line of cases associated with United States v. Reyes, 798 F.2d 380, 382 (10th Cir. 1986), which suggest that evidence indicating a defendant is a drug trafficker is alone sufficient to establish probable cause to search that defendant's residence for drugs and related evidence.

Biglow, 562 F.3d at 1278-79 (footnote omitted). Hence, in Biglow we emphasized the necessity of a case-by-case analysis. We employ such a case-specific approach in the matter at hand.

-11-

opinion, based upon extensive experience, that individuals involved in drug activity like Mr. Richard's typically maintain evidence of and/or tools of their illegal activity in their residence, including firearms, drugs, and drug components. That is sufficient to establish a nexus, and it is only bolstered by the explicit references to illegal activity in the Wilshire residence.

**B. Staleness**

With respect to the staleness issue, Mr. Richard asserts that the affidavit in support of the search warrant "lacked facts to support the credibility of hearsay assertions of unknown individuals that were based on observations eighteen to twenty-four months prior to the search warrant being requested." Appellee's Br. at 15. "[W]hether information is too stale to establish probable cause depends on the nature of the criminal activity, the length of the activity, and the nature of the property to be seized." United States v. Mathis, 357 F.3d 1200, 1207 (10th Cir. 2004). As the government notes, the affidavit contains approximately eighteen separate instances of Mr. Richard using methamphetamine, selling methamphetamine, or obtaining and/or distributing ephedrine from numerous sources from May 2004 to January 2006. Additionally, three independent confidential sources described four instances of Mr. Richard using or possessing firearms. The last information regarding Mr. Richard's drug use was provided to Agent Nunley on January 11, 2006, and the last information regarding

-12-

Mr. Richard's proximity to firearms was provided to Agent Nunley on January 18, 2006. Given that Mr. Richard was suspected of continuous and ongoing drug activity, the information provided both from surveillance by law enforcement personnel and from conversations with confidential sources concerning Mr. Richard's conduct from May 2004 to January 2006 (some two weeks prior to the request for the warrant), was not stale.

We further agree with the district court that "[t]he older information or the less recent information set forth in the affidavit . . . provides context and continuity . . . and . . . in a very realistic sense is a backdrop that provides, in turn, a confidence level for the magistrate in evaluating the more recent information in the affidavit. The older information . . . does bolster the affidavit as to the more recent activity." Tr. of Mot. to Suppress at 37-38, R. Vol. 2. And to the extent Mr. Richard challenges the reliability of the confidential sources, law enforcement personnel corroborated the information the sources provided by comparing their information with each other and by conducting their own independent surveillance. All of this information portrayed Mr. Richard as a user, distributor and manufacturer of methamphetamine, as well as a supplier of ephedrine to other methamphetamine producers, from 2004 until 2006, when the search warrant was issued.

We therefore agree with the district court that the affidavit provided probable cause to believe that evidence of Mr. Richard's criminal activity would be found at the Wilshire residence.[3]

## II. 18 U.S.C. § 922(g)(3):

18 U.S.C. § 922(g)(3) provides that "[i]t shall be unlawful for any person . . . who is an unlawful user of or addicted to any controlled substance . . . to possess[,] in or affecting commerce, any firearm." Mr. Richard moved to dismiss the indictment on the ground that § 922(g)(3) was unconstitutionally vague as applied to him, and on the ground that it violated the Second Amendment's guarantee of the "right of the people to keep and bear Arms." U.S. Const. amend. II.

The district court denied the motion to dismiss based on the Second Amendment prior to trial. With respect to the constitutional challenge on the ground of vagueness, the district court denied Mr. Richard's motion to dismiss after the government had presented its case. We affirm both those rulings.

---

[3]Even were we not to conclude that the affidavit provided probable cause for a search warrant, we would conclude, for essentially the reasons stated by the district court, that the good faith doctrine of United States v. Leon, 468 U.S. 897 (1984), would require denial of Mr. Richard's motion to suppress the evidence.

**A. Second Amendment Challenge:**

"This court reviews a challenge to the constitutionality of a statute *de novo*." Yes on Term Limits, Inc. v. Savage, 550 F.3d 1023, 1027 (10th Cir. 2008). In District of Columbia v. Heller, 128 S. Ct. 2783 (2008), the Supreme Court held that the Second Amendment provides an individual with a right to possess and use a firearm for lawful purposes, such as self-defense within the home.

The Court, however, specifically stated in Heller that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings." Id. at 2816-17; see also United States v. McCane, 573 F.3d 1037, 1047 (10th Cir. 2009) (rejecting the argument that § 922(g) is unconstitutional in light of Heller). The Court also specifically stated its intention that such "presumptively lawful regulatory measures [act] only as examples; our list does not purport to be exhaustive." Heller, 128 S. Ct. at 2817 n.26.

Accordingly, the individual right to bear arms protected by the Second Amendment is subject to appropriate restrictions like those contained in 18 U.S.C. § 922(g)(3).

**B. Unconstitutional or Void for Vagueness as Applied:**

Mr. Richard argues that § 922(g)(3) is unconstitutionally vague as applied to him. In particular, he asserts that "§ 922(g)(3) fails to apprise what conduct is prohibited and fails to establish minimal guidelines to govern law enforcement." Appellant's Br. at 30. We have stated:

> [W]e reject . . . an as-applied constitutional challenge to the statute criminalizing firearm possession by drug users [§ 922(g)(3)]. Such a challenge will fail where the government has introduced sufficient evidence of a temporal nexus between the drug use and firearm possession. . . . Given the ample evidence of Defendant's heavy, habitual drug use in the year during which he possessed the firearms at issue, we conclude that the statute was not unconstitutionally vague as applied to him.

United States v. Edwards, 540 F.3d 1156, 1162 (10th Cir.), cert. denied, 129 S. Ct. 964 (2008); see also United States v. Patterson, 431 F.3d 832, 836 (5th Cir. 2005) ("As [§ 922(g)(3)] applies to [defendant], it is not vague; an ordinary person would understand that [defendant's] actions establish him as an unlawful user. He admitted that he regularly used marijuana . . . Section 922(g)(3) is not unconstitutionally vague as applied to [defendant].")

Mr. Richard tries to distinguish Edwards on two grounds: "simply establishing a pattern of use, as opposed to 'habitual use' as in Edwards, during the time the firearm is 'possessed,' is insufficient to support a violation of the law"; and "[t]here must be not only a temporal nexus between the regular and ongoing use of a controlled substance and possession of a firearm, there must also

-16-

be a nexus between the use and the physical location of the firearm." Appellant's Br. at 31. We reject these distinctions. Mr. Richard cites no case authority for his requirement of a "physical nexus" between the defendant's drug use and the firearm, nor can we find any such case law. And, Mr. Richard's attempt to distinguish "a pattern of use" from "habitual abuse" is, simply, unavailing in the circumstances of this case. There was ample evidence that Mr. Richard was a regular user of methamphetamine during a time period when he possessed at least one firearm.

For the foregoing reasons, we affirm the district court's denial of Mr. Richard's several motions to dismiss the indictment.

## III.  Unlawful User Under § 922(g)(3) and Sufficiency of Evidence:

Mr. Richard argues the district court improperly instructed the jury on the elements of § 922(g)(3) and the definition of a drug-user and that the evidence was insufficient to convict him of being a drug user in possession of a firearm within the meaning of that statute.

### A.  Adequacy of Jury Instruction:

The full instruction given to the jury defining a drug user in possession of a firearm under 18 U.S.C. § 922(g)(3) was as follows:

An "unlawful user of a controlled substance" is an individual who, on a regular and on-going basis, uses a controlled substance in a manner other than that prescribed by a licensed physician.

For the defendant to possess a firearm "while" he was an unlawful user of a controlled substance does not require that the defendant used the controlled substance at the precise time he possessed the firearm. The defendant is not required to have used illegal drugs on a particular day, or within a matter of days before the possession of the firearm. Nor is the defendant required to have been under the influence of an illegal drug at the exact same time that he possessed the firearm. For the defendant to have possessed the firearm "while" he was an unlawful user of a controlled substance means that the defendant must have possessed the firearm during the same time period that he was a regular and ongoing unlawful user of a controlled substance.

Instruction No. 17, Jury Instructions at 19-20, R. Vol. 1 at 109-10. Mr. Richard argues that "this definition does not comport with the stated Congressional purpose of the statute, *viz*: keeping firearms out of the hands of categories of potentially irresponsible persons." Appellant's Br. at 40. Mr. Richard submitted a proposed jury instruction that would require the jury to find that an unlawful user under § 922(g)(3) was a person who met the definition of an addict found in the Diagnostic and Statistical Manual of Mental Disorders, (4th ed.), which the district court declined to give.

"We review de novo whether, as a whole, the [trial] court's jury instructions correctly stated the governing law and provided the jury with an ample understanding of the issues and applicable standards." Martinez v. Caterpillar, Inc., 572 F.3d 1129, 1132 (10th Cir. 2009). However, we review for an abuse of discretion the district court's decision whether to give a particular

-18-

instruction and we "reverse only in those cases where we have a substantial doubt whether the jury was fairly guided in its deliberations." Id. (quotation marks and citation omitted). "As long as the charge [to the jury] as a whole adequately states the law, the refusal to give a particular instruction is not an abuse of discretion." Zokari v. Gates, 561 F.3d 1076, 1090 (10th Cir. 2009) (quotation marks and citation omitted). We are confident that the instruction in this case complied with those requirements. We find no abuse of discretion in the district court's refusal to submit the jury instruction Mr. Richard sought, and we conclude that the instructions, as a whole, adequately and accurately stated the governing law.

## B. Sufficiency of the Evidence:

With respect to the sufficiency of the evidence that Mr. Richard was an unlawful user of a controlled substance and that there was an adequate nexus between the controlled substance use and possession of the firearm, we have held that the "sufficiency of the evidence to support a jury's verdict is a legal question that we review de novo." United States v. Lewis, 240 F.3d 866, 870 (10th Cir. 2001).[4] "On appeal, the court asks whether, when considered in the light most

---

[4]Mr. Richard properly preserved his sufficiency-of-the-evidence challenge by moving for judgment of acquittal under Fed. R. Crim. P. 29(a) at the close of the government's case-in-chief, which was denied. Mr. Richard then filed a post-trial motion for a judgment of acquittal, pursuant to Fed. R. Crim. P. 29(c), which

(continued...)

favorable to the government, a reasonable jury could have found the defendant guilty beyond a reasonable doubt." Id.

Mr. Richard argues that the government failed to prove he was an unlawful user of a controlled substance during the time period the firearm was in his bedroom and, additionally, that the government failed to prove a nexus between the unlawful use of a controlled substance (methamphetamine) and the possession of the firearm. He asserts "[t]here must be not only a temporal nexus between the regular and ongoing use of a controlled substance and possession of a firearm, there must also be a nexus between the use and the physical location of the firearm." Appellant's Br. at 42.[5]

As another circuit has observed, "cases interpreting § 922(g)(3) typically discuss two concepts: contemporaneousness and regularity. The Eighth Circuit has explained that 'courts generally agree the law runs the risk of being unconstitutionally vague without a judicially-created temporal nexus between the gun possession and regular use.' The Third, Fourth, and Ninth Circuits have stated that there must be some regularity of drug use in addition to contemporaneousness to meet the statute's requirements." United States v.

[4](...continued)
suffered a similar fate.

[5]Interestingly, or perhaps more appropriately phrased as "tellingly," Mr. Richard cites no cases in support of his argument that the government must demonstrate a nexus between the physical location of the firearm and his drug use. We are aware of no such cases imposing that requirement.

-20-

Burchard, ___ F.3d ___, 2009 WL 2768494, at \*5 (6th Cir. 2009) (quoting United

States v. Patterson, 431 F.3d 832, 838-39 (8th Cir. 2005) (further citations

omitted))).

As applied to this case, Mr. Richard admitted to law enforcement personnel

that he had used methamphetamine for the past three to four years and his last

usage was two days before the interview on February 8, 2006.  Additionally, the

methamphetamine residue and drug paraphernalia discovered in Mr. Richard's

room on the same day and in the same place that the rifle was discovered provide

facts from which the jury could reasonably infer that Mr. Richard possessed the

firearm during the same period that he was a regular and ongoing user of a

controlled substance.  We accordingly conclude that the evidence was sufficient

to support the jury's verdict.


**IV.  Due Process Claim:**

Finally, Mr. Richard argues that the district court erred in denying his post-

trial motion for judgment of acquittal on the ground that the government denied

Mr. Richard's due process rights by interfering with his effort to preserve

evidence.  This allegation derives from the government's refusal to permit

Mr. Richard to record his interview which occurred on February 8, 2006, at the

Stephens County Sheriff's Department.  Agent Nunley, Rodney Richards, an

investigator for the Stephens County Sheriffs Department, and two DEA agents

-21-

were present at the February 8 interview. Although Mr. Richard asked to record the interview, and apparently even brought recording equipment, he was not permitted to record the meeting. Three of the law enforcement personnel testified at Mr. Richard's trial as to what transpired in the interview.

In his motion for acquittal following the jury's guilty verdict, Mr. Richard asserted that the denial of permission to record the February 8 interview amounted to a denial of due process of law, and he further argued that the doctrine of spoliation of evidence required dismissal of the case. The district court denied the motion. We agree with the district court's decision.[6]

---

[6]The district court took pains to explain the significance of this issue:

> Although there was testimony at trial about certain aspects of defendant's physical appearance that suggested drug use, and about the drug-related items found in defendant's bedroom when the search was conducted . . . , no witness claimed the ability to evaluate the observed features with precision sufficient to support an inference as to the temporal proximity between Mr. Richard's use of methamphetamine and his possession of the rifle that was found in his bedroom. The evidence at trial would not, without the testimony about defendant's admissions during the interview at the Sheriff's office, support a jury finding against the defendant on the temporal element of the § 922(g)(3) charge. The government does not contend otherwise.

Order at 5-6, R. Vol. 1 at 168-69. After discussing in detail the testimony provided by the officers, the district court summed it up as follows:

> In this case, three law enforcement officers, including a federal agent and a federal investigator, testified about an interview at the Sheriff's office. One of those witnesses, Agent Nunley, gave an account of the interview which would be sufficient to convict. One

(continued...)

-22-

The Supreme Court has held that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." Arizona v. Youngblood, 488 U.S. 51, 58 (1988); see also United States v. Beckstead, 500 F.3d 1154, 1159 (10th Cir. 2007) ("[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law."). Mr. Richard argues that the government's refusal to allow him to record his interview was tantamount to an intentional failure to preserve exculpatory evidence, in violation of his due process rights. He further contends that "[t]he agents operated in 'bad faith' because this was a conscious

---

[6](...continued)
of those witnesses, Ms. Crowder, gave testimony which would not just fall short of satisfying the temporal requirement—it would, if credited, undermine the testimony of Agent Nunley in support of that requirement. The testimony of the third witness, Deputy Richards, fell into the middle ground. He gave very general support to Agent Nunley's account of the duration and frequency of defendant's use of methamphetamine, but, as noted, could not attribute to defendant any statement as to whether his last use was 30 days, 60 days, 90 days or six months before the Oklahoma City use a couple of days before the interview at the Sheriff's office, and could not quote Crowder, Nunley or [DEA Agent] Kushner as having even asked about that.

The case went to the jury on the basis of evidence fraught with material uncertainties which clearly would not have existed if the defendant had not been prohibited by Agent Nunley from recording the interview.

Id. at 9-10, R. Vol. 1 at 172-73.

decision to prevent a contemporaneous, complete record of each question and

answer during the interview." Appellant's Br. at 44.

The district court rejected Mr. Richard's argument, stating as follows:

> In the case at bar, as in <u>Arizona v. Youngblood</u>, there has not been, and cannot be, a showing that Agent Nunley's prohibition of tape recording deprived the defendant of the benefit of exculpatory evidence. By Agent Nunley's account, a tape recording would have made no difference. The testimony of Deputy Richards and Investigator Crowder tends, to some degree, to raise questions about Agent Nunley's estimation of his proficiency versus that of a tape recorder, but there has been no showing that a recording, if made, would have been exculpatory. Consequently, applying the distinction recognized by the Court in <u>Arizona v. Youngblood</u>, the court concludes that bad faith must be shown.

> Having carefully considered all of the evidence before it, the court stops short of finding actual bad faith on the part of Agent Nunley or his colleagues. At the time he prohibited the recording, Agent Nunley would not have known with any certainty whether he was avoiding the creation of exculpatory evidence. In bringing defendant to the table, prohibiting recording, and eliciting admissions, Agent Nunley was probably maximizing the leverage that his badge gave him, but that does not amount to actual bad faith.

> If the due process required complete good faith, rather than bad faith, my conclusion would likely be different. The federal agent and investigators knew exactly what they were doing when they invited defendant to the Sheriff's office. They hoped to walk out of the conference room with the indictable case that they didn't have when they walked in. It worked.

> . . . Although I cannot find outright bad faith, I do find, under all the circumstances, the government's treatment of defendant was high-handed and arrogant.

Order at 12-13, R. Vol. 1 at 175-76.

We agree with the district court that, while definitely not commendable, the government's conduct did not amount to bad faith as construed in our case law. We accordingly affirm the district court's denial of Mr. Richard's motion for acquittal on the ground that the Due Process clause of the Constitution was violated.

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's orders and decision and AFFIRM the defendant's conviction and sentence.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge