# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-2778

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| Andrew Xavier Seay, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: May 13, 2010
Filed: September 8, 2010

_____

Before BYE, MELLOY, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Andrew Seay was indicted and pled guilty to possession of a firearm while being an unlawful user of, or addicted to, a controlled substance, in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2), and was sentenced by the district court[1] to nine months imprisonment. Seay filed this timely appeal, arguing that the government unnecessarily delayed his indictment and that his conviction is unconstitutional under the Second Amendment. The government moved to dismiss Seay's appeal on the

_____

[1]The Honorable Lawrence L. Piersol, United States District Judge for the District of South Dakota.

grounds that Seay waived his appeal rights by pleading guilty. We grant the government's motion in part, deny it in part, and affirm Seay's conviction.

I.

In March 2008, Seay was on probation as a result of a South Dakota conviction for distribution and possession with intent to distribute marijuana. On March 7, 2008, state law enforcement officers conducted a probation search of Seay's vehicle and residence, during which they found marijuana in Seay's vehicle and residence, and four firearms—two pistols and two shotguns—in Seay's residence. Seay's roommate told the officers that he and Seay used the shotguns for hunting. Seay denied that the pistols belonged to him. Seay was arrested on state charges based on the items found in the search. Following his arrest, Seay provided a urine sample that tested positive for marijuana.

On November 4, 2008, Seay was indicted by a federal grand jury for possessing a firearm while being an unlawful user of, or addicted to, a controlled substance, in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2). Seay pled not guilty and moved to dismiss the indictment, arguing that the government unnecessarily delayed in presenting the case to the grand jury and that the indictment violated his Second Amendment rights. The magistrate judge[2] issued a Report and Recommendation ("R & R"), recommending that Seay's motion be denied. The district court never adopted the R & R, however, as Seay pled guilty on April 8, 2008. Seay's plea agreement contained a standard waiver of defenses and appeal rights, stating that Seay "waives all defenses and his right to appeal any non-jurisdictional issues." (Appellant's Add. 9.) At sentencing, the district court determined Seay's offense level to be 23, with a criminal history category III, resulting in a Guidelines sentencing range of 57 to 71

[2]The Honorable John E. Simko, United States Magistrate Judge for the District of South Dakota.

months imprisonment. The district court varied downward significantly and imposed a nine-month sentence.

Following the imposition of sentence, Seay filed a notice of appeal. The government moved to dismiss the appeal based on the appeal waiver in Seay's plea agreement. After considering briefs from both parties, we elected to decide the waiver issue along with the merits of Seay's appeal, which is now before us.

II.

Before addressing the merits of Seay's appeal, we must first decide whether he has waived the right to bring this appeal at all.

> As a general rule, "[a] defendant's knowing and intelligent guilty plea forecloses 'independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.'" United States v. Vaughan, 13 F.3d 1186, 1187 (8th Cir. 1994) (quoting Tollett v. Henderson, 411 U.S. 258, 267 (1973)). There are exceptions to this rule, however; a person may, despite a valid guilty plea, pursue a certain type of claim that has been variously defined as a claim that attacks "the State's power to bring any indictment at all," United States v. Broce, 488 U.S. 563, 575 (1989), that protects a defendant's "right not to be haled into court," Blackledge v. Perry, 417 U.S. 21, 30 (1974), and that "the charge is one which the State may not constitutionally prosecute," Menna v. New York, 423 U.S. 61, 62 n.2 (1975) (per curiam). We have often interpreted these Supreme Court cases to foreclose claims that raise "nonjurisdictional" issues and to permit only claims that question the trial court's "jurisdiction."

Weisberg v. Minnesota, 29 F.3d 1271, 1279 (8th Cir. 1994) (alterations in original); see also United States v. Smith, 422 F.3d 715, 724 (8th Cir. 2005) ("It is a well-established legal principle that a valid plea of guilty is an admission of guilt that waives all nonjurisdictional defects and defenses."); Walker v. United States, 115 F.3d

603, 604 (8th Cir. 1997) ("Stated differently, a valid guilty plea forecloses an attack on a conviction unless on the face of the record the court had no power to enter the conviction or impose the sentence."). Thus, in order to bring this appeal, Seay must show that his appeal is jurisdictional in nature.

First, Seay argues that the government improperly delayed seeking an indictment in his case, and that the district court should have dismissed the indictment under Federal Rule of Criminal Procedure 48. Rule 48 allows a court to "dismiss an indictment . . . if unnecessary delay occurs in: (1) presenting a charge to a grand jury; (2) filing an information against a defendant; or (3) bringing a defendant to trial." Fed. R. Crim. P. 48(b). The essence of Seay's argument—that the government waited too long to prosecute him—is similar to the argument raised in Cox v. Lockhart, 970 F.2d 448 (8th Cir. 1992). In Cox, a habeas petitioner argued, following his valid guilty plea, that his state speedy trial claim should be analyzed as a Sixth Amendment speedy trial claim. Id. at 452-53. We held that the petitioner had waived his right to a speedy trial by pleading guilty, noting that "[a] voluntary plea of guilty constitutes a waiver of all non-jurisdictional defects[,] . . . [and] the right to a speedy trial is non-jurisdictional in nature." Id. at 453 (alterations in original) (quoting Becker v. Nebraska, 435 F.2d 157, 157 (8th Cir. 1970) (per curiam)); see also United States v. Cook, 463 F.2d 123, 125 n.6 (5th Cir. 1972) ("[W]e . . . recogniz[e] that pleas of guilty ordinarily constitute a waiver of all non-jurisdictional defects . . . including the right to object to delay in trial under [Fed. R. Crim. P.] 48(b) or the Sixth Amendment."); United States v. Doyle, 348 F.2d 715, 718-19 (2d Cir. 1965) (declining to reach Rule 48(b) and Sixth Amendment arguments following defendant's guilty plea). We believe that Seay's Rule 48 argument is similarly non-jurisdictional, as the district court was not without power to hear the case, see Walker, 115 F.3d at 604, simply because it declined to exercise its discretion to dismiss the indictment due to delay. Thus, we hold that Seay has waived his Rule 48 argument by pleading guilty.

-4-

Second, Seay argues that 18 U.S.C. § 922(g)(3) is facially unconstitutional following the Supreme Court's decision in District of Columbia v. Heller, 128 S. Ct. 2783 (2008). According to Seay, the prohibition on firearm possession in § 922(g)(3) violates his individual right to keep and bear arms enshrined in the Second Amendment. This is not an as-applied challenge; rather, Seay argues that § 922(g)(3) is unconstitutional in all instances. See United States v. Salerno, 481 U.S. 739, 745 (1987) (to prove facial unconstitutionality, "the challenger must establish that no set of circumstances exists under which the Act would be valid"). We have previously held that such facial attacks are jurisdictional in nature and survive a valid guilty plea.[3] See, e.g., United States v. Morgan, 230 F.3d 1067, 1071 (8th Cir. 2000) ("A claim that a statute is facially unconstitutional" survives a guilty plea.); Sodders v. Parratt, 693 F.2d 811, 812 (8th Cir. 1982) (per curiam) ("[T]his Circuit and others have indicated that a guilty plea does not preclude a defendant from claiming that the statute under which he pleaded is unconstitutional."); see also United States v. Bell, 70 F.3d 495, 496-97 (7th Cir. 1995); United States v. Palacios-Casquete, 55 F.3d 557, 561 (11th Cir. 1995); United States v. Skinner, 25 F.3d 1314, 1316-17 (6th Cir. 1994); United States v. Montilla, 870 F.2d 549, 552-53 (9th Cir. 1989).

The government directs us to United States v. Fox, 573 F.3d 1050 (10th Cir.), cert. denied, 130 S. Ct. 813 (2009), in which the Tenth Circuit held, without significant discussion, that a defendant's challenge to the constitutionality of 18 U.S.C. § 922(g) was non-jurisdictional and, therefore, waived. Id. at 1052 n.1. The government argues that Fox's holding is consistent with the way the Supreme Court has explained the concept of jurisdiction in cases such as United States v. Cotton, 535 U.S. 625 (2002). In Cotton, several defendants were convicted of conspiring to distribute, and to possess with intent to distribute, a detectable amount of cocaine and

_____

[3]As-applied challenges to the constitutionality of a statute, however, are not jurisdictional. See United States v. Morgan, 230 F.3d 1067, 1071 (8th Cir. 2000). To the extent that Seay challenges the constitutionality of § 922(g)(3) as applied to him, we hold that this argument is foreclosed by his guilty plea.

cocaine base. Id. at 627-28. The district court, however, made a drug-quantity finding at sentencing that implicated the enhanced penalties under 21 U.S.C. § 841(b)(1)(A). Id. at 628. The defendants appealed, arguing that their sentences were invalid under Apprendi v. New Jersey, 530 U.S. 466 (2000), "because the issue of drug quantity was neither alleged in the indictment nor submitted to the petit jury." Cotton, 535 U.S. at 628-29. The Fourth Circuit agreed, vacating the defendants' sentences "because an indictment setting forth all the essential elements of an offense is both mandatory and jurisdictional, . . . [and] a court is without jurisdiction to . . . *impose a sentence* for an offense not charged in the indictment." Id. (quotation omitted). However, the Supreme Court rejected the Fourth Circuit's jurisdictional holding, noting that the "Court some time ago departed from [the] view that indictment defects are 'jurisdictional.'" Id. at 631. The modern concept of jurisdiction, according to the Court, is a "courts' statutory or constitutional *power* to adjudicate the case." Id. at 630 (quoting Steel Co. v. Citizens for Better Env't, 523 U.S. 83, 89 (1998)).

Seay, however, does not argue that his indictment was defective, as did the defendant in Cotton. Instead, he alleges that the indictment should never have been brought at all because the government "may not constitutionally prosecute" him. See Menna, 423 U.S. at 62 n.2. If Seay is correct, then he should never have been "haled into court" at all, see Blackledge, 417 U.S. at 30, and his conviction must be reversed. Such challenges to the court's jurisdiction may be pursued despite a defendant's guilty plea. See Broce, 488 U.S. at 575; Menna, 423 U.S. at 62 n.2; Blackledge, 417 U.S. at 30. Because we see no way to reconcile Fox with the clear language of our cases holding that facial challenges are jurisdictional in nature, see Morgan, 230 F.3d at 1071, we hold that Seay's Second Amendment challenge is jurisdictional and, therefore, survives his guilty plea.

III.

Having held that Seay's constitutional argument survives his guilty plea, we now turn to the merits of his claim. Seay argues that § 922(g)(3)'s ban on firearm possession is facially unconstitutional following the Supreme Court's Heller decision, which he claims established the right to keep and bear arms as a fundamental constitutional right. We review the constitutionality of the statute de novo.[4] See United States v. Rodriguez, 581 F.3d 775, 796 (8th Cir. 2009), pet. for cert. filed (U.S. June 10, 2010) (No. 09-11360).

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." Prior to 2009, the Supreme Court had not examined that right in depth. This changed with the Court's landmark decision in Heller, which established that the Second Amendment right is an individual right unconnected to service in the militia, and struck down the District of Columbia's ban on handgun possession. See 128 S. Ct. at 2791, 2797, 2821-22. In dicta, the Court emphasized that,

> Like most rights, the right secured by the Second Amendment is not unlimited. . . . Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools

_____

[4]Although Seay failed to object to the magistrate judge's R & R, this does not affect our standard of review. See United States v. James, 353 F.3d 606, 612 (8th Cir. 2003) ("[W]here the defendant fails to file timely objections to the magistrate judge's report and recommendation, the factual conclusions underlying that defendant's appeal are reviewed for plain error. Our review of the questions of law, however, remains de novo." (quotation omitted)).

and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

Id. at 2816-17. The Court noted that its list of presumptively valid laws "does not purport to be exhaustive." Id. at 2817 n.26.

Since Heller, the Supreme Court determined the inevitable question of whether the Second Amendment is applicable to the states through the Fourteenth Amendment. See McDonald v. City of Chicago, 130 S. Ct. 3020 (2010). In McDonald, the Court stated, "[I]t is clear that the Framers and ratifiers of the Fourteenth Amendment counted the right to keep and bear arms among those fundamental rights necessary to our system of ordered liberty." Id. at 3042. Although a majority of the Court held that, as a fundamental right, the Second Amendment is applicable to the states, the Court was unable to agree on how. See id. at 3030-31, 3044-50 (Alito, J., writing the plurality opinion) (holding that the Second Amendment right is incorporated to the states through the Due Process Clause of the Fourteenth Amendment); id. at 3058-88 (Thomas, J., concurring in part and concurring in the judgment) (arguing that the Second Amendment right "is a privilege of American citizenship that applies to the States through the Fourteenth Amendment's Privileges or Immunities Clause"). The plurality opinion stressed, however, that the Heller "holding did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons and the mentally ill' . . . . We repeat those assurances here. . . . [I]ncorporation does not imperil every law regulating firearms." See id. at 3047 (plurality opinion) (quoting Heller, 128 S. Ct. at 2816-17)).

Following Heller, many defendants have argued that 18 U.S.C. § 922(g), or some subsection thereof, violates the Second Amendment. To date, none have succeeded. For example, we have upheld the constitutionality of § 922(g)(1) (felon in possession). See United States v. Irish, 285 F. App'x 326 (8th Cir. 2008) (unpublished per curiam). Our sister circuits have upheld the constitutionality of

§ 922(g)(1), as well as § 922(g)(4) (persons committed to mental institutions or adjudicated as a mental defective) and § 922(g)(9) (persons convicted of a domestic-violence misdemeanor). See United States v. Williams, No. 09-3174, 2010 WL 3035483, at *4-7 (7th Cir. August 5, 2010) (§ 922(g)(1)); United States v. Rozier, 598 F.3d 768, 770-71 (11th Cir. 2010) (§ 922(g)(1)); United States v. McRobie, No. 08-4632, 2009 WL 82715, at *1 (4th Cir. Jan. 14, 2009) (unpublished per curiam) (§ 922(g)(4)); United States v. Skoien, No. 08-3770, 2010 WL 2735747, at *7 (7th Cir. July 13, 2010) (en banc) (§ 922(g)(9)); United States v. White, 593 F.3d 1199, 1206 (11th Cir. 2010) (same); cf. United States v. Marzzarella, No. 09-3185, 2010 WL 2947233, at *7-12 (3d Cir. July 29, 2010) (upholding challenge to 18 U.S.C. § 922(k), which prohibits possession of any firearm with a removed, obliterated, or altered serial number). But see United States v. Chester, No. 09-4084, 2010 WL 675261, at *3, 6 (4th Cir. Feb. 23, 2010) (unpublished per curiam) (vacating a district court's refusal to dismiss an indictment for violation of § 922(g)(9) under Heller and remanding for the district court to conduct a more thorough analysis).

Turning to the subsection at issue here, § 922(g)(3) makes it unlawful for anyone "who is an unlawful user of or addicted to any controlled substance" to possess a firearm. Prior to Heller, we upheld the constitutionality of § 922(g)(3), albeit not specifically under the Second Amendment. See United States v. Letts, 264 F.3d 787, 789-90 (8th Cir. 2001) (holding that § 922(g)(3) is not unconstitutional under the Commerce Clause following United States v. Lopez, 514 U.S. 549 (1995)). Following Heller, one circuit and several district courts have upheld § 922(g)(3) against Second Amendment attack. See, e.g., United States v. Richard, 350 F. App'x 252, 260 (10th Cir. 2009) (unpublished) (holding, without significant discussion, that § 922(g)(3) is the kind of "longstanding prohibition[] on the possession of firearms" preserved in Heller (quoting Heller, 128 S. Ct. at 2816-17)); United States v. Korbe, No. 09-05, 2010 WL 2404394, at *3-4 (W.D. Pa. June 9, 2010) (unpublished) (holding that § 922(g)(3) is a "regulatory measure[]" that Heller held to be

"presumptively lawful"); United States v. Lacy, No. 09-CR-135, 2009 WL 3756987, at *1 (E.D. Wis. Nov. 6, 2009) (unpublished) ("Nothing in Heller indicates that § 922(g)(3) somehow falls outside the range of permissible limitations on the right to bear arms . . . ."); United States v. Carter, No. 2:09-cr-00055, 2009 WL 2160576, at *3-4 (S.D. W. Va. July 13, 2009) (unpublished) (refusing to dismiss indictment for violation of § 922(g)(3), noting that it "is far less restrictive than the laws held unconstitutional in Heller and is consistent with the safety based exceptions recognized in that case"); United States v. Prince, No. 09-10008, 2009 WL 1875709, at *2 (D. Kan. June 26, 2009) (unpublished), rev'd on other grounds, 593 F.3d 1178 (10th Cir. 2010), cert. denied, 2010 WL 1811236 (June 14, 2010) ("Heller . . . did not and does not prohibit Congress from putting certain limitations on firearms [such as § 922(g)(3)], particularly when, as in this case, that firearm is involved in illegal activity."); United States v. Yancey, No. 08-cr-103, 2008 WL 4534201, at *1 (W.D. Wis. Oct. 3, 2008) (unpublished) (holding that § 922(g)(3) "is another example of a longstanding prohibition on firearm possession that Heller permits," but noting that, at the time, "no court ha[d] confronted" the statute yet); see also United States v. Patterson, 431 F.3d 832, 836 (5th Cir. 2005) ("Prohibiting unlawful drug users from possessing firearms is not inconsistent with the right to bear arms guaranteed by the Second Amendment . . . .").[5]

Nothing in Seay's argument convinces us that we should depart company from *every* other court to examine § 922(g)(3) following Heller. Further, § 922(g)(3) has the same historical pedigree as other portions of § 922(g) which are repeatedly upheld by numerous courts since Heller. See Gun Control Act of 1968, Pub. L. No. 90-618, 82 Stat. 1213. Moreover, in passing § 922(g)(3), Congress expressed its intention to

---

[5]Although Patterson is a pre-Heller case, at the time Patterson was decided the Fifth Circuit had already held, in a decision very similar to Heller, that the Second Amendment right to keep and bear arms is an individual right unrelated to militia service. See United States v. Emerson, 270 F.3d 203, 227-61 (5th Cir. 2001).

"keep firearms out of the possession of drug abusers, a dangerous class of individuals." United States v. Cheeseman, 600 F.3d 270, 280 (3d Cir. 2010), pet. for cert. filed, 78 U.S.L.W. 3731 (U.S. June 1, 2010) (No. 09-1470). As such, we find that § 922(g)(3) is the type of "longstanding prohibition[] on the possession of firearms" that Heller declared presumptively lawful. See 128 S. Ct. at 2816-17. Accordingly, we reject Seay's facial challenge to § 922(g)(1).

IV.

For the foregoing reasons, we grant the government's motion in part, deny it in part, and affirm Seay's conviction.

_____