# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-3155

_____

United States of America

*Plaintiff - Appellee*

v.

Isaac Bishop Charles

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Arkansas - Ft. Smith

_____

Submitted: September 19, 2025
Filed: November 20, 2025

_____

Before COLLOTON, Chief Judge, ERICKSON and STRAS, Circuit Judges.

_____

ERICKSON, Circuit Judge.

Isaac Charles pled guilty to possessing a machine gun in violation of 18 U.S.C. §§ 922(o) and 924(a)(2). Prior to sentencing, Charles filed a motion to dismiss on the grounds that § 922(o) violates the Second Amendment. The district court[1] denied

---

[1]The Honorable Susan O. Hickey, Chief Judge, United States District Court for the Western District of Arkansas.

the motion to dismiss and sentenced Charles to a term of imprisonment of forty-six months.  Charles appeals from the denial of his motion to dismiss.  We affirm.

## I.    BACKGROUND

On July 10, 2023, an Arkansas State Police officer initiated a traffic stop of Charles's vehicle for an illegible temporary paper license in the rear window.  While talking to Charles, the officer smelled marijuana in the vehicle.  Charles admitted to having marijuana in the center console and on the rear seat, so the officer performed a search of the vehicle.  In addition to recovering marijuana, the officer discovered a Glock model 26, 9mm caliber pistol with a 3D printed device attached to it, which allowed the firearm to operate in a fully automatic manner.

In a second superseding indictment, the government charged Charles with unlawful possession of a machine gun.  Pursuant to a written plea agreement, Charles pled guilty.  Prior to sentencing, the United States Supreme Court decided United States v. Rahimi, 502 U.S. 680 (2024).  Charles filed a motion to dismiss contending that Rahimi abrogated Eighth Circuit precedent upholding the § 922(o) restrictions on machine gun possession.  The district court disagreed, and Charles appealed.

## II.    DISCUSSION

We review the constitutionality of a statute *de novo*.  United States v. Seay, 620 F.3d 919, 923 (8th Cir. 2010).  Charles challenges § 922(o) on its face.  To succeed on a facial challenge, Charles must "establish that no set of circumstances exists under which the Act would be valid." Rahimi, 602 U.S. at 693 (quoting United States v. Salerno, 481 U.S. 739, 745 (1987)).  To uphold the constitutionality of the statute, the government must only demonstrate that § 922(o) "is constitutional in some of its applications." Id.

A.    Fincher and Heller

This Court has previously considered the restrictions on machine gun possession under § 922(o) and held that they were constitutional under the Second Amendment.  United States v. Fincher, 538 F.3d 868, 874 (8th Cir. 2008).  In Fincher, the Court determined that machine guns were not covered by the Second Amendment.  Id. ("Machine guns are not in common use by law-abiding citizens for lawful purposes and therefore fall within the category of dangerous and unusual weapons that the government can prohibit for individual use.").  This holding relied on the plain text of the Second Amendment, which the Supreme Court later characterized as the "first step" in a proper Second Amendment analysis.  N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen, 597 U.S. 1, 24 (2022).  The Court did not engage in the means-end scrutiny that some circuits applied but was ultimately rejected by the Supreme Court.  Id.

The Court's conclusion in Fincher followed Supreme Court precedent decided two months earlier.  538 F.3d at 873-74 (quoting and citing Dist. of Columbia v. Heller, 554 U.S. 570 (2008)).  In Heller, the Supreme Court held that individual self-defense was the "central component" of the Second Amendment's right to keep and bear arms, and any assertion that individual self-defense was a "subsidiary interest" was "profoundly mistaken."  554 U.S. at 599.  "The traditional militia was formed from a pool of men bringing arms 'in common use at the time' for lawful purposes like self-defense."  Id. at 624.

Charles asserts that Fincher and Heller have been undermined by the Supreme Court's subsequent opinions in Bruen and Rahimi.  We need not decide that issue as his facial challenge must fail in any event.

B.    Bruen and Rahimi

In Bruen, the Court reaffirmed Heller's "common use for self-defense" rationale for the private right to bear arms.  Id. at 10, 32.  The Court also resolved a

common misunderstanding in the courts of appeals regarding the <u>Heller</u> opinion by explaining that it did not include means-end scrutiny. <u>Id.</u> at 24.

The two-step Second Amendment <u>Heller</u> analysis is (1) "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct" and (2) if the plain text covers the conduct, "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." <u>Id.</u> Applying the two-step framework to this facial challenge, it fails at step one.

Federal law defines a machine gun to include "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger." 18 U.S.C. § 921(24) (incorporating by reference 26 U.S.C. § 5845(b)). This definition includes (1) the Mark 38 machine gun system that is mounted on warships;[2] (2) the M230 machine gun mounted on military helicopters;[3] and (3) the M2 machine gun, which the military has mounted on armored vehicles.[4]

The plain meaning of the word "bear" in the Second Amendment is to "carry," and, when used in conjunction with the word "arms," it means "carrying for a particular purpose—confrontation." <u>Heller</u>, 554 U.S. at 584; <u>see also</u> <u>Rahimi</u>, 602 at 691 (discussing the limits on the Second Amendment's right to "carry" weapons and firearms). As a threshold matter, an individual must be able to "carry" the firearm under the plain meaning of the Second Amendment. <u>Heller</u>, 554 U.S. at 584 (the individual must be able to "wear, bear, or carry . . . upon the person or in the clothing or in a pocket . . . .") (cleaned up and citation omitted). Each of the above

---

[2]N<span style="font-variant:small-caps">avy</span>, https://www.navy.mil/Resources/Fact-Files/Display-FactFiles/Article/2167836/mk-38-25-mm-machine-gun-system/
[3]U.S. A<span style="font-variant:small-caps">rmy</span> W<span style="font-variant:small-caps">eapon</span> S<span style="font-variant:small-caps">ystems</span> H<span style="font-variant:small-caps">andbook</span> 2020-2021 at 72, https://www.army.mil/e2/downloads/rv7/2020-2021_Weapon_Systems_Handbook.pdf.
[4]<u>Id.</u> at 80.

machine gun examples requires mounting to a heavy support structure. An individual is unable to "carry" any of these machine guns. Because there are machine guns, including the Mark 38, the M230, and the M2, that are not bearable weapons, the regulation of at least those weapons is consistent with the Second Amendment.

Because § 922(o) is constitutional in some of its applications, this facial challenge fails. Rahimi, 502 U.S. at 693.

## III. CONCLUSION

The judgment of the district court is affirmed.

COLLOTON, Chief Judge, concurring in the judgment.

Appellant Charles's facial challenge to the constitutionality of 18 U.S.C. § 922(o) is foreclosed by *United States v. Fincher*, 538 F.3d 868 (8th Cir. 2008). The district court recognized that it was bound by *Fincher* and denied Charles's motion to dismiss the charge. This court should affirm the judgment on that basis.

In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court held that the Second Amendment confers an individual right to keep and bear arms. *Id.* at 592. At the same time, the Court acknowledged an "important limitation" on the right—namely, that "the sorts of weapons protected were those 'in common use at the time.'" *Id.* at 627 (quoting *United States v. Miller*, 307 U.S. 174, 179 (1939)). The Court observed that this limitation is supported by the historical prohibition on carrying "dangerous and unusual weapons." *Id.* (internal quotation omitted). The Court rejected a "startling reading" of *Miller* under which only weapons useful in warfare are protected, because "it would mean that the National Firearm Act's restrictions on machineguns (not challenged in *Miller*) might be unconstitutional." *Id.* at 624. The Court explained that "the conception of the militia at the time of the Second Amendment's ratification was the body of all citizens capable of military

-5-

service, who would bring the sorts of lawful weapons that they possessed at home to militia duty." *Id.* at 627. That "small arms" would not be useful "against modern-day bombers and tanks" did not justify construing the Second Amendment to protect the possession of weapons that are most useful in military service but unusual in society at large—"M-16 rifles and the like." *Id.*

*Fincher* applied *Heller* and affirmed a conviction for unlawful possession of a machine gun under 18 U.S.C. § 922(o). The court rejected a claim that the defendant's possession of a machine gun was protected by the Second Amendment. *Fincher* observed that *Heller*, applying "historical tradition," recognized an "important limitation on the right to keep and carry arms"—namely, "that the sorts of weapons protected were those 'in common use at the time.'" 538 F.3d at 874 (quoting *Heller*, 554 U.S. at 627).

This court then concluded:

> [U]nder *Heller*, Fincher's possession of the guns is not protected by the Second Amendment. Machine guns are not in common use by law-abiding citizens for lawful purposes and therefore fall within the category of dangerous and unusual weapons that the government can prohibit for individual use.

*Id.* at 874; *accord United States v. Allen*, 630 F.3d 762, 766 (8th Cir. 2011). *Fincher* is binding precedent for this panel and squarely forecloses the constitutional challenge raised by Charles.

Charles relies on *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), but that decision does not undermine *Fincher*. This court in *Fincher* did not employ the sort of means-end scrutiny that was disapproved in *Bruen*. Rather, *Fincher* applied *Heller*'s analysis based on text and historical understanding. *Bruen* then reaffirmed the same "test" that was "set forth in *Heller*," and "made the constitutional standard endorsed in *Heller* more explicit." *Id*. at 21, 26, 31. *Bruen*

-6-

cited *Heller*'s explanation that "the Second Amendment protects only the carrying of weapons that are 'in common use at the time,' as opposed to those that 'are highly unusual in society at large.'" *Id*. at 47 (quoting *Heller*, 554 U.S. at 627).

*Fincher*, like *Hamblen v. United States*, 591 F.3d 471, 474 (6th Cir. 2009), "faithfully applied *Heller* and reasonably came to the only conclusion that could logically follow: § 922(o)'s ban on machinegun possession is constitutional." *United States v. Bridges*, 150 F.4th 517, 522-23 (6th Cir. 2025). Charles asserts that *Fincher* (and apparently *Heller*) was incorrect about history and tradition or common use of machine guns, but this panel cannot overrule *Fincher*.

Rather than resolve the appeal based on circuit precedent as determined by the district court and urged by the government, the majority conjures up its own argument. The assertion is that the definition of machine gun under § 922(o) includes "(1) the Mark 38 machine gun system that is mounted on warships; (2) the M230 machine gun mounted on military helicopters; and (3) the M2 machine gun, which the military has mounted on armored vehicles." The majority then rejects Charles's facial challenge to the statute because an individual cannot "carry" these mounted weapon systems, so the Second Amendment does not guarantee a right to possess them. The majority cites no authority and identifies no case in which the United States has asserted that § 922(o) encompasses the enumerated weapon systems or prosecuted anyone on that theory.

This approach is quite unfair to Charles and unsound as an adjudicatory practice. The government does not defend the statute on the basis that some "machine guns" are not bearable arms. Charles had no opportunity to address the proposition. It is not obvious that the majority's assertion is correct. A "machine gun" is defined as a type of "weapon," 18 U.S.C. § 921(24), and a "weapon" is "'an instrument of offensive or defensive combat . . . [such] as a club, sword, gun, or grenade.'" *Bondi v. VanDerStok*, 604 U.S. 458, 470 (2025) (alteration and omission in original) (quoting *Webster's Third New International Dictionary* 2589 (def. 1) (1966)); *see also Webster's Third New International Dictionary* 2589 (def. 1) (1981)

-7-

(same); *Webster's New International Dictionary of the English Language* 2314 (def. 1) (1933) ("an instrument of offensive or defensive combat . . . [such] as a gun, a sword, a shield, etc."). Given that a club, sword, gun, grenade, and shield all can be carried, it is debatable whether the term "weapon" in this criminal statute should be construed expansively to include large mounted military weapon systems and the like. "A word is given more precise content by the neighboring words with which it is associated." *Fischer v. United States*, 603 U.S. 480, 487 (2024) (internal quotation omitted); *see* Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* 196 (2012) (explaining that "the most common effect of the canon is . . . to limit a general term to a subset of all things or actions that it covers").

The scope of the statutory definition is a matter properly left for a case in which the issue is raised, briefed, and necessary to a decision. This appeal should be resolved by a straightforward application of circuit precedent.

_____