# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2834

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Northern District of Iowa. |
| Robert Bena, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: May 10, 2011
Filed: December 21, 2011

_____

Before MURPHY, BEAM, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Robert Bena pleaded guilty to unlawful possession of firearms while subject to a court order of protection, in violation of 18 U.S.C. § 922(g)(8). Bena reserved his right to appeal the district court's[1] denial of his motion to dismiss the indictment. On appeal, Bena renews his arguments that § 922(g)(8) violates the Second, Fifth, and Sixth Amendments. We affirm.

---

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

## I.

On February 2, 2010, a grand jury returned a one-count indictment charging Bena with possession of multiple firearms while subject to a no-contact order, in violation of § 922(g)(8). The underlying order arose out of an Iowa criminal charge that alleged Bena had assaulted his wife by kicking her in the ribs. Pursuant to Iowa Code § 664A.3, an Iowa district court entered the order at Bena's initial appearance on the charge. Bena appeared via television monitor, but he did not have the assistance of counsel. The Iowa court found that there was probable cause to believe that "a domestic abuse assault had occurred" and also found that "the presence of [Bena] in [his wife's] residence poses a threat to the safety of [his wife], persons residing with [his wife], or members of [his wife's] immediate family." The court ordered, among other things, that Bena "shall not use, or attempt to use, or threaten to use physical force against [his wife] that would reasonably be expected to cause bodily injury."

Bena filed a motion to dismiss the federal indictment, asserting multiple constitutional challenges to § 922(g)(8). As relevant here, Bena claimed that § 922(g)(8) is unconstitutional on its face under the Second Amendment. He also asserted that § 922(g)(8), as applied in this case, violated his rights under the Fifth and Sixth Amendments, because the underlying state order was obtained in violation of his rights to due process of law and assistance of counsel. The district court denied the motion.

Bena pleaded guilty pursuant to a written plea agreement, reserving the right to appeal the issues raised in his motion to dismiss. The district court imposed a sentence of three years' probation. Bena now appeals, renewing his constitutional challenges.

## II.

We review Bena's constitutional challenges *de novo*. Enacted as part of the Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, 108 Stat. 1796, § 922(g)(8) makes it unlawful for any person:

who is subject to a court order that –

(A) was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate;

(B) restrains such person from harassing, stalking, or threatening an intimate partner[2] of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and

(C)(i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or

(ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury[,]

. . .

to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

---

[2]"The term 'intimate partner' means, with respect to a person, the spouse of the person, a former spouse of the person, an individual who is a parent of a child of the person, and an individual who cohabitates or has cohabited with the person." 18 U.S.C. § 921(a)(32).

A.

We first consider Bena's argument that "§ 922(g)(8) impermissibly infringes on an individual's Second Amendment right to bear arms and is therefore facially unconstitutional." To succeed on this facial challenge, Bena "must establish that no set of circumstances exists under which [§ 922(g)(8)] would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987); *see also United States v. Seay*, 620 F.3d 919, 922 (8th Cir. 2010).

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court held that "the Second Amendment protects the right to keep and bear arms for the purpose of self-defense," and that a "law that banned the possession of handguns in the home" was therefore unconstitutional. *McDonald v. City of Chicago*, 130 S. Ct. 3020, 3026 (2010). But the Court cautioned that "[l]ike most rights, the right secured by the Second Amendment is not unlimited," and that "nothing in [the] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions on the commercial sale of arms." *Heller*, 554 U.S. at 626-27. The Court noted that it "identif[ied] these presumptively lawful regulatory measures only as examples" and that the "list does not purport to be exhaustive." *Id.* at 627 n.26; *see also McDonald*, 130 S. Ct. at 3047 (plurality opinion).

The analytical basis for the presumptive constitutionality of these regulatory measures was not thoroughly explained, but we know at least that "statutory prohibitions on the possession of weapons by some persons are proper," and "exclusions need not mirror limits that were on the books in 1791." *United States v. Skoien*, 614 F.3d 638, 640-41 (7th Cir. 2010) (en banc). The first federal felon-in-

possession law was not enacted until 1938, when it applied to those convicted of violent felonies, and the prohibition was extended to all felons in 1961. *See id.* at 640. Federal law first proscribed the possession of firearms by the mentally ill in 1968. *See id.* at 641. In *United States v. Seay*, 620 F.3d 919, this court rejected a Second Amendment challenge to § 922(g)(3), which restricts firearm possession by any person "who is an unlawful user of or addicted to any controlled substance." Although the prohibition was not enacted until 1968, *see* Gun Control Act of 1968, Pub. L. No. 90-618, § 102, 82 Stat. 1213, 1220-21, this court observed that Congress sought to "keep firearms out of the possession of drug abusers, a dangerous class of individuals," and concluded that § 922(g)(3) was "the type of 'longstanding prohibition[] on the possession of firearms' that *Heller* declared presumptively lawful." *Seay*, 620 F.3d at 925.

It seems most likely that the Supreme Court viewed the regulatory measures listed in *Heller* as presumptively lawful because they do not infringe on the Second Amendment right. *See United States v. Marzzarella*, 614 F.3d 85, 91 (3d Cir. 2010). The Court explained that "it has always been widely understood that the Second Amendment . . . codified a pre-existing right," 554 U.S. at 592, and the opinion of the District of Columbia Circuit affirmed in *Heller* observed that the pre-existing right "was subject to restrictions at common law." *Parker v. District of Columbia*, 478 F.3d 370, 399 (D.C. Cir. 2007). On that view, a restriction such as prohibiting the possession of firearms by violent felons does not "impair the core conduct upon which the right was premised." *Id.* That the Supreme Court contemplated such a historical justification for the presumptively lawful regulations is indicated by the Court's reference to the "historical tradition" that supported a related limitation on the *types* of weapons protected by the Second Amendment, 554 U.S. at 627, and by the Court's assurance that it would "expound upon *the historical justifications* for the exceptions" mentioned, including categories of prohibited persons, if and when those exceptions come before the Court. *Id.* at 635 (emphasis added).

*Heller* characterized the Second Amendment as guaranteeing "the right of *law-abiding, responsible* citizens to use arms in defense of hearth and home." *Id.* (emphasis added). Scholarship suggests historical support for a common-law tradition that permits restrictions directed at citizens who are not law-abiding and responsible. The Court's discussion is consistent with the view that in "classical republican philosophy, the concept of a right to arms was inextricably and multifariously tied to that of the 'virtuous citizen,'" such that "the right to arms does not preclude laws disarming the unvirtuous (i.e. criminals) or those who, like children or the mentally unbalanced, are deemed incapable of virtue." Don B. Kates, Jr., *The Second Amendment: A Dialogue*, Law & Comtemp. Probs., Winter 1986, at 146 (1986); *see also* Don B. Kates & Clayton E. Kramer, *Second Amendment Limitations and Criminological Considerations*, 60 Hastings L.J. 1339, 1359 & n. 120 (2009); Glenn Harlan Reynolds, *A Critical Guide to the Second Amendment*, 62 Tenn. L. Rev. 461, 480-81 (1995); *cf.* Adam Winkler, Heller*'s Catch-22*, 56 UCLA L. Rev. 1551, 1563 n.67 (2009). In the 1760s, Blackstone explained that English subjects enjoyed a right to have arms for their defense, "suitable to their condition and degree" and "under due restrictions." 1 William Blackstone, *Commentaries* *139. This right and others, he recounted, were subject to "necessary restraints," viewed as "gentle and moderate," and designed to prevent "what would be pernicious either to ourselves or our fellow citizens." *Id*. at *140. Proposals from the Founding period reflect a similar understanding of the pre-existing right to bear arms. A proposal of Samuel Adams at the Massachusetts Ratifying Convention would have forbidden Congress to prevent "the people of the United States, *who are peaceable citizens*, from keeping their own arms." Journal of Convention: Wednesday February 6, 1788, *reprinted in Debates and Proceedings in the Convention of the Commonwealth of Massachusetts Held in the Year 1788*, at 86 (Boston, William White 1856) (emphasis added). Pennsylvania delegates in 1787 similarly proposed a constitutional provision stating that "no law shall be passed for disarming the people or any of them *unless for crimes committed, or real danger of public injury from individuals*." The Address and Reasons of Dissent of the Minority of the Convention of Pennsylvania to their

Constituents, *reprinted in* Bernard Schwartz, 2 *The Bill of Rights: A Documentary History* 662, 665 (1971) (emphasis added). *See generally* C. Kevin Marshall, *Why Can't Martha Stewart Have a Gun?*, 32 Harv. J.L. & Pub. Pol'y 695 (2009).

At least some applications of § 922(g)(8), therefore, "promote the government's interest in public safety consistent with our common law tradition." *Parker*, 478 F.3d at 399. Congress enacted § 922(g)(8) in light of evidence that domestic violence presents a pervasive problem in American society. *See* Antonia C. Novello et al., *From the Surgeon General, US Public Health Service: A Medical Response to Domestic Violence*, 267 JAMA 3132 (1992) ("Domestic Violence may touch as many as one fourth of all American families."), *cited in* H.R. Rep. No. 103-395, at 25 (1993). That firearms cause injury or death in domestic situations has been established by empirical studies that are catalogued in opinion such as *Skoien*, 614 F.3d at 643-44, and *United States v. Reese*, 627 F.3d 792, 802-03 (10th Cir. 2010). *See also United States v. Hayes*, 555 U.S. 415, 427 (2009) ("Firearms and domestic strife are a potentially deadly combination nationwide.").

Insofar as § 922(g)(8) prohibits possession of firearms by those who are found to represent "a credible threat to the physical safety of [an] intimate partner or child," 18 U.S.C. § 922(g)(8)(C)(i), it is consistent with a common-law tradition that the right to bear arms is limited to peaceable or virtuous citizens. Although persons restricted by § 922(g)(8) need not have been convicted of an offense involving domestic violence, this statute—like prohibitions on the possession of firearms by violent felons and the mentally ill—is focused on a threat presented by a specific category of presumptively dangerous individuals. The prohibition, moreover, need not apply in perpetuity, but only so long as a person is "subject to" a qualifying court order. In Iowa, the order terminates at the conclusion of a criminal case, or after a prescribed period if the action results in a conviction or deferred judgment and the defendant ceases to pose a danger to the victim. *See* Iowa Code §§ 664A.3.3, 664A.5, 664A.8; *State v. Cramer*, No. 09-0957, 2010 WL 2925127, at \*6 (Iowa Ct. App. July 28,

2010) (unpublished). On a facial challenge, we conclude that the Second Amendment does not preclude this type of regulatory measure. *Cf. Reese*, 627 F.3d at 802-04 & n.4 (applying intermediate and strict levels of means-end scrutiny, and concluding that § 922(g)(8) passes constitutional muster); *United States v. Lippman*, 369 F.3d 1039, 1044 (8th Cir. 2004); Nelson Lund, *The Ends of Second Amendment Jurisprudence: Firearms Disabilities and Domestic Violence Restraining Orders*, 4 Tex. Rev. L. & Pol. 157, 189 (1999) ("[A] strong case can be made for upholding that part of § 922(g)(8) that imposes a firearms disability on person who are under a domestic violence restraining order because a court has found that they represent a credible threat to the physical safety of their domestic partner or child.").

The text of § 922(g)(8) also extends the prohibition on firearm possession to persons subject to a court order that merely "prohibits the use, attempted use, or threatened use of physical force against [an] intimate partner or child that would reasonably be expected to cause bodily injury." 18 U.S.C. § 922(g)(8)(C)(ii). As such, the plain language may permit restriction even where there has been no judicial finding of dangerousness. The Fifth Circuit thought Congress must have "proceeded on the assumption that the laws of the several states were such that court orders, issued after notice and hearing, should not embrace the prohibitions of paragraph (C)(ii) unless such either were not contested or evidence credited by the court reflected a real threat or danger of injury to the protected party by the party enjoined." *United States v. Emerson*, 270 F.3d 203, 262 (5th Cir. 2001); *see also Lippman*, 369 F.3d at 1044. Under Iowa law, for example, an order shall not issue unless a magistrate finds that the "presence of or contact with the defendant poses a threat to the safety of the alleged victim, persons residing with the alleged victim, or members of the alleged victim's family." Iowa Code § 664A.3.1.b. Bena brings only a facial challenge, and the state court in his case made a specific finding that he posed a threat to the safety of another. We thus need not consider whether § 922(g)(8) would be constitutional as applied to a person who is subject to an order that was entered without evidence of dangerousness. *See* Eugene Volokh, *Implementing the Right To*

*Keep and Bear Arms for Self-Defense: An Analytical Framework and a Research Agenda*, 56 UCLA L. Rev. 1443, 1504-05 (2009); Lund, *supra*, 4 Tex. Rev. L. & Pol. at 189-90.

B.

Bena next claims that § 922(g)(8) is unconstitutional as applied to him. He argues his conviction violated his "Fifth and Sixth Amendment rights, as he was not provided the assistance of counsel or provided a meaningful opportunity to participate" in the underlying state proceeding.

Bena's argument is an impermissible collateral attack on the predicate no-contact order. In *Lewis v. United States*, 445 U.S. 55 (1980), the Supreme Court considered whether an uncounseled state conviction obtained in violation of the Sixth Amendment could serve as the predicate for a subsequent conviction under 18 U.S.C. app. § 1202(a)(1) (1976), the predecessor to 18 U.S.C. § 922(g)(1).[3] *Id.* at 56. The Court answered this question in the affirmative, concluding that the statute did not permit a collateral attack on the underlying conviction, and the Constitution did not establish a right to make one. *Id.* at 65-67. The plain language of the statute did not "suggest[] a congressional intent to limit its coverage to persons [whose convictions are not subject to collateral attack]." *Id.* at 60 (second alteration in original) (internal quotation omitted). The Court further explained that the Sixth Amendment did not

_____

[3]Lewis was convicted under section 1202(a)(1) of Title VII of the Omnibus Crime Control and Safe Streets Act of 1968, Pub. L. No. 90-351, 82 Stat. 197, 236 (codified at 18 U.S.C. app. § 1202(a)(1) (1976)) (repealed 1986). That provision made it unlawful for "[a]ny person who . . . has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony" to "receive[], possess[], or transport[] in commerce or affecting commerce, after the date of enactment of this Act, any firearm." The substance of this provision is now contained in § 922(g)(1). *Cf. United States v. Elliott*, 128 F.3d 671, 672 (8th Cir. 1997) (per curiam) (applying *Lewis* to a conviction under § 922(g)(1)).

prohibit use of the uncounseled state conviction, because "[t]he federal gun laws . . . focus not on reliability, but on the mere fact of conviction . . . , in order to keep firearms away from potentially dangerous persons." *Id.* at 67.

The rationale of *Lewis* applies to a conviction under § 922(g)(8). Like § 1202(a)(1) (and § 922(g)(1)), the text of § 922(g)(8) is not limited to persons whose no-contact orders are not subject to collateral attack. *See United States v. Hicks*, 389 F.3d 514, 535 (5th Cir. 2004). Rather, § 922(g)(8)(A) sets forth the procedural requirements for the underlying proceeding: the order must have been "issued after a hearing of which [the defendant] received actual notice, and at which [the defendant] had an opportunity to participate." Bena was subject to a qualifying no-contact order under § 922(g)(8), and that alone subjected him to the requirements of that provision. *See Hicks*, 389 F.3d at 535; *United States v. Baker*, 197 F.3d 211, 216-17 (6th Cir. 1999). We therefore reject his Fifth and Sixth Amendment claims. *Accord United States v. DuBose*, 598 F.3d 726, 732 (11th Cir. 2010) (per curiam) (collecting cases).

Bena's reliance on *United States v. Belless*, 338 F.3d 1063 (9th Cir. 2003), is misplaced. In *Belless*, the Ninth Circuit considered a conviction under § 922(g)(9), which forbids firearm possession by persons who have "been convicted in any court of a misdemeanor crime of domestic violence." The court held that the defendant's misdemeanor battery conviction could not serve as a predicate conviction, because the defendant was not represented by counsel and did not knowingly and intelligently waive his right to counsel. *See id.* at 1069. *Belless* was rooted in the text of the statute: a person shall not be considered to have been convicted of a misdemeanor crime of domestic violence for purposes of § 922(g)(9) unless he was "represented by counsel in the case, or knowingly and intelligently waived the right to counsel in the case." 18 U.S.C. § 921(a)(33)(B)(i)(I). Section 922(g)(8) contains no such requirement.

-10-

\* \* \*

The judgment of the district court is affirmed.

_____