THOMAS, Chief Judge,
concurring:
I agree entirely with, and concur in, the majority opinion. I write separately, however, because the challenge to California’s tern-day waiting period can be resolved at step one of our Second Amendment jurisprudence. As a longstanding qualification on the commercial sale of arms under District of Columbia v. Heller, 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008), a ten-day waiting period is presumptively lawful. Therefore, it is unnecessary to proceed to the second step intermediate scrutiny examination of the law.
Heller and McDonald v. City of Chicago, 561 U.S. 742, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010), clarified our understanding of the protections and applicability of the Second Amendment, but left examinations of specific regulations to the future, noting that the right to keep and bear arms is “not unlimited.” Heller, 554 U.S. at 595, 626, 128 S.Ct. 2783. As the majority explains, we have adopted a two-step inquiry to analyze Second Amendment challenges under Heller. United States v. Chovan, 735 F.3d 1127, 1136 (9th Cir. 2013); Majority Op. 820-21. At step one, we ask “whether the challenged law burdens conduct protected by the Second Amendment,” and if it does, we proceed to step two and “apply an appropriate level of scrutiny.” Id. “To determine whether a challenged law falls outside the historical scope of the Second Amendment, we ask whether the regulation is one of the presumptively lawful regulatory measures identified in Heller or whether the record includes persuasive historical evidence establishing that the regulation at issue imposes prohibitions that fall outside the historical scope of the Second Amendment.” Jackson v. City & Cty. of San Francisco, 746 F.3d 953, 960 *830 (9th Cir. 2014) (citations omitted). If a regulation qualifies as longstanding and presumptively lawful at step one, we need go no further. Jackson, 746 F.3d at 960 (quoting Brown v. Entm’t Merchants Ass’n, 564 U.S. 786, 792, 131 S.Ct. 2729, 180 L.Ed.2d 708 (2011)).
As to the step one analysis, Heller specifically identified a non-exhaustive list of “longstanding prohibitions,” which can be considered “presumptively lawful regulatory measures” falling outside the scope of Second Amendment protection. 554 U.S. at 626, 627 n.26, 128 S.Ct. 2783. The examples identifiéd include “longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.” Id. at 626-27, 128 S.Ct. 2783. Similarly, the right to keep and bear arms is limited to “the sorts of weapons” that are “in common use.” Id. at 627-28, 128 S.Ct. 2783 (citing United States v. Miller, 307 U.S. 174, 179, 59 S.Ct. 816, 83 L.Ed. 1206 (1939)).
The category of presumptively lawful regulatory measures at issue here is “laws imposing conditions and qualifications on the commercial sale of arms.” Id. at 627, 128 S.Ct. 2783. The dictionary definitions of the terms ‘conditions’ and ‘qualifications’ largely reflect their common meaning. Webster’s first definition of a condition is “[something established or agreed upon as a requisite to the doing or taking effect of something else; a stipulation or provision.” Webster’s Second New International Dictionary, 556 (1959).[1] As relevant here, a qualification is “[a] condition precedent that must be complied with for the attainment of a status, the perfection of a right, etc., or for admission to an office — ” Id. at 2031.[2]
On its face, California’s waiting period law is a condition or qualification on the sale of guns: It imposes a brief delay — to permit compliance with background check requirements and provide a ‘cooling off period — as a prerequisite to acquiring a gun.[3]
*831 Heller also suggested that presumptively lawful regulations should be longstanding. Here, waiting periods — which first appeared on the books in California in 1923 — constitute a sufficiently longstanding condition or qualification on the commercial sale of arms to be considered presumptively lawful. See Law of June 13, 1923, ch. 339, §§ 2, 10, 1923 Cal. Laws 695, 696.
Prohibitions on felon firearm possession illustrate this point. Circuits that have considered the question agree “that longstanding prohibitions on the possession of firearms by felons are presumptively lawful.” Binderup v. Att’y Gen., 836 F.3d 336, 347 (3d Cir. 2016); see also United States v. Bena, 664 F.3d 1180, 1182-84 (8th Cir. 2011). The term “longstanding” is not restricted to the time of the founding of the Republic. For example, the “first federal statute disqualifying felons from possessing firearms was not enacted until 1938.” United States v. Skoien, 614 F.3d 638, 640 (7th Cir. 2010) (citing Federal Firearms Act of 1938, ch. 850, § 2(f), 52 Stat. 1250, 1251); see also United States v. McCane, 573 F.3d 1037, 1048 (10th Cir. 2009) (Tym-kovich, J., concurring) (noting that “the weight of historical evidence suggests felon dispossession laws are creatures of the twentieth — rather than the eighteenth— century5’) (citation omitted). Legal limits on firearm ownership by the mentally ill are also “of 20th Century vintage.” Skoien, 614 F.3d at 641 (citing Gun Control Act of 1968, Pub.L. 90-618, § 102, 82 Stat. 1213, 1220). Extending even further into Helléf s list of examples, other authorities suggest that during the founding era, there were “no restrictions on the commercial sales of firearms as such,” nor were there “bans on guns in schools [or] government buildings.” Adam Winkler, Heller’s Catch-22, 56 UCLA L. Rev. 1551, 1563 (2009).
Thus, “Heller demonstrates that a regulation can be deemed ‘longstanding5 even if it cannot boast a precise founding-era analogue.” Nat'l Rifle Ass’n of Am., 700 F.3d at 196; see also Skoien, 614 F.3d at 641 (“[W]e do take from Heller the message that exclusions need not mirror limits that were on the books in 1791.”). We have agreed, noting that “early twentieth century regulations might nevertheless demonstrate a history of longstanding regulation if their historical prevalence and significance is properly developed in the record.” Fyock v. Sunnyvale, 779 F.3d 991, 997 (9th Cir. 2015).
Indeed, waiting-period statutes have existed in several states since the 1920s. See, e.g., Law of June 13, 1923, ch. 339, §§ 2, 10, 1923 Cal. Laws 695, 696; Law of June 2, 1923, ch. 252, § 7, 1923 Conn. Laws 3707; Law of Mar. 7, 1923, ch. 266 § 10, 1923 N.D. Laws 379. And as the majority aptly points out, there is nothing new in having to w;ait to procure - a firearm. Though delay has not always been associated with government regulation, the ability to immediately exercise Second Amendment rights has no foundation in history. Majority Op. at 827. To find otherwise is to focus too narrowly on the precise conduct that laws of the founding era regulated and to oversimplify the founders’ views and the Court’s views as expressed in Heller. Although the notion of a computerized background check would have been foreign to our founding ancestors, we do have clues about what was considered reasonable at that time. See, e.g., Bena, 664 F.3d *832 at 1183 (“In the 1760s, Bláckstone explained that English subjects enjoyed a right to have arms for their defense, ‘suitable to their conditions and degree’ and ‘under due restrictions.’ This right and others, he recounted, were subject to ‘necessary restraints,’ viewed as ‘gentle and moderate,’_Proposals from the Founding period reflect a similar understanding of the pre-existing right to bear arms.”) (citing 1 William Bláckstone, Commentaries *139,140).
Unlike the complete ban on handguns at issue in Heller, a ten-day waiting period only delays — for a brief, predictable term — the full exercise of the Second Amendment right to keep and bear arms. Such minor temporal regulation is not without precedent. See, e.g., Kachalsky v. Cty. of Westchester, 701 F.3d 81, 84 (2d Cir. 2012) (“By 1785, New York had enacted laws regulating when and where firearms could be used, as well as restricting the storage of gun powder.”) (citing Act of Apr. 22, 1785, ch. 81, 1785 Laws of N.Y. 152; Act of Apr. 13, 1784, ch. 28, 1784 Laws of N.Y. 627). Moreover, as it applies to the appellees in this case, the delay does not even necessarily prevent them from exercising their right to keep and bear arms because they challenge the law on the basis that they already own firearms and should therefore be considered pre-cleared for acquiring more.
In addition, the imposition of a reasonable waiting period before the exercise of a constitutional right is not anomalous. Cf. Skoien, 614 F.3d at 641. The Supreme Court has permitted waiting periods of varying duration in several other constitutional contexts, including before obtaining a marriage license, and permits for gathering to protest or parade. Eugene Volokh, Implementing the Right to Keep and Bear Arms for Self-Defense: An Analytical Framework and a Research Agenda, 56 UCLA L. Rev. 1443,1538-42 (2009).
Of course, what is reasonable in one context may not be reasonable in another. For example, unpredictable political events may create a need for a permit to. gather in a public space because “timing is of the essence in politics!)] It is almost impossible to predict the political future; and when an event occurs, it is often necessary to have one’s voice heard promptly, if it is to be considered at all.” Shuttlesworth v. City of Birmingham, 394 U.S. 147, 163, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969) (Harlan, J., concurring). In contrast, a known ten-day delay in procuring a firearm is relatively minor. No similar external time line exists in the gun ownership context, and certainly not for those who already own firearms and are thus already exercising their Second Amendment rights.
Thus, just as it was in Renta, the question here is whether the regulation in question is outside the scope of the Second Amendment and thus presumptively lawful. See Peruta v. Cty. of San Diego, 824 F.3d 919, 939 (9th Cir. 2016). The answer to that question is yes. In full, California’s reasonable waiting period is presumptively lawful as a condition or qualification on the commercial sale of arms, which the record demonstrates is also a longstanding regulatory measure. Therefore, I would resolve the inquiry at the first stage of analysis. If, however, the inquiry proceeded to the second stage, I. agree completely with the majority’s analysis.

. The ninth listed definition pertains specifically to legal contexts and defines a condition as "[a] provision in a contract, conveyance, grant, or will, providing that the beginning, vesting, rescission, or a modification, of an estate or interest in property or of a personal obligation shall depend upon an uncertain event, which may or may not exist or happen; also, the event itself.” Webster’s Second New International Dictionary, 556 (1959).

. For reference, the first two definitions of qualification are reproduced here in their, entirety; “1. Act or an instance of qualifying, or a state or process of being qualified. 2. a That which qualifies; any natural endowment, or any acquirement, which fits a person for a place, office, or employment, or to sustain any . character; requisite capacity or possession; also, a requisite or essential of a thing, b A condition precedent that must be complied with for the attainment of a status, the perfection of a right, etc., or for admission to an office, employment, dignity, etc., as, the qualification of citizenship.” Webster’s Second New International Dictionary, 2031 (1959).

.Although the constitutionality of waiting periods is an issue of first impression, in the aftermath of Heller, both our Circuit and our sister Circuits have concluded that regulatory measures need not be expressly named in Heller to be considered presumptively lawful. See, e.g., Peruta v. County of San Diego, 824 F.3d 919, 927 (9th Cir. 2016) (enbanc) (holding that there was no Second Amendment right to carry concealed weapons in public); Drake V. Filko, 724 F.3d 426, 429 (3d Cir. 2013) (holding “the requirement that applicants demonstrate a 'justifiable need’ to publicly carry a handgun for self-defense qualifies as a 'presumptively lawful,’ 'longstanding' regulation and therefore does not burden conduct within the scope of the Second Amendment’s guarantee”); Nat’l Rifle Ass’n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, *831 & Explosives, 700 F.3d 185, 203 (5th Cir. 2012) (holding that burdening "the ability of 18-to-20-year-olds to purchase handguns ... is consistent with a longstanding, historical tradition”); United States v. Rene E., 583 F.3d 8, 12 (1st Cir. 2009) (holding that "the existence of a longstanding tradition of prohibiting juveniles from both receiving and possessing handguns” places the law at issue in 'the presumptively lawful category).